# Cambria Iron Company, Appellant, *v.* Leidy.

*Ejectment—Rule to bring ejectment—Dispute as to title of land—Option—Exercise of option—Notice in writing—Abandonment.*

1. A person in possession of land and claiming title thereto has the right under the Acts of May 25, 1893, P. L. 131, and April 16, 1903, P. L. 212, to rule another person out of possession, but with an apparent interest in the land, to bring an action of ejectment to determine title. When a petition for such a rule is presented the court should not of its own motion award an issue under the Act of June 10, 1893, P. L. 415, but if such an issue is awarded, and neither party makes any objection, the appellate court will not reverse a judgment on a verdict rendered at the trial of such issue, on account of the irregularity of the proceedings.

2. Where an owner of coal gives an option to another to purchase the same, and stipulates that notice of the acceptance of the option should be given in writing, and it appears at the trial of an issue to determine whether such notice in writing had been given, that the persons giving the option deny positively ever having received written notice, the case is for the jury.

3. Where persons having an option to purchase coal, take no action

for seven years towards completing their title, and the optionor retains possession, pays taxes and claims title and gives an option to another party, the question of the optionee abandoning his interest in the land under the option is one for the jury, and a verdict and judgment against him will be sustained.

Argued Oct. 4, 1909. Appeal, No. 44, Oct. T., 1909, by plaintiffs, from judgment of C. P. Cambria Co., Sept. T., 1906, No. 376, on verdict for defendants in case of Cambria Iron Company. and Coulter & Huff v. Harry Leidy, Howard Leidy and Amos Leidy. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Issue to determine title to real estate. Before O'CONNOR, P. J.

The facts are stated in the opinion of the Supreme Court.

The court charged in part as follows:

In the issue you have been impaneled and sworn to try two parties are contending for the ownership of certain coal lands in East Taylor township, in this county. The Leidy heirs are in possession of the land and, conceiving that the Cambria Iron Company had a claim by virtue of an option which they had given for the purchase of this coal, they presented a petition to the court asking for a rule, under the act of assembly, upon the Cambria Iron Company to bring its action of ejectment (the action provided for determining title to land) within a certain length of time or be forever barred from making any claim to the land. An answer was filed setting forth the position of the Cambria Iron Company, and the court felt that this proceeding could be best taken under the act of 1893, which provides that the court in certain cases shall frame an issue, and in this issue make one party plaintiff and the other party defendant. The Leidy heirs being in possession of the land were made defendants, and the Cambria Iron Company, not being in possession and claiming the right of possession, were made plaintiffs. Under the pleadings then before the court, and the state of the record, there were but two questions to determine: first, whether or not the Cambria Iron

Company or its predecessors in the claim, under the option, gave the notice required by the option, or did what was required to be done in order to make the option binding on the defendants, and whether it took such action as warranted the belief that it intended to maintain its title, or failed to act as the law required, and thus abandoned the title.

The option in this case was first taken by Albert Goughnour. It was afterwards transferred to Coulter & Huff of Greensburg, and later transferred to the Cambria Iron Company. Some time after the option was given Mr. Masters, who held a position with the Cambria Iron Company, according to the testimony, came to the defendants and asked them for an option. We are not sure that the option was executed, but our recollection, from the testimony, is that it was, and that defendants say that at the time they told him about their having given an option to Mr. Goughnour, and told him the circumstances connected with it, and that he informed them that it was no good, because no money had been paid upon it. The option is dated January 31, 1900, and it provides that the grantors (the defendants) "shall at any time before the 15th day of April, A. D. 1900, execute and deliver deed of general warranty, in fee simple, free of all incumbrances, provided that on or before the 15th day of April, A. D. 1900, said second party, his heirs or assigns (in this case the Cambria Iron Company and its predecessor), give to said first party, his heirs, executors, administrators or assigns, notice in writing that the said second party, his heirs or assigns has elected to accept the coal and mining rights above described for the consideration hereinafter mentioned. In the event of such notice given the deed is to be executed and delivered and possession given to the said second party, his heirs or assigns, within twenty days after the date of such notice. In consideration whereof the said second party, his heirs or assigns agree to pay to said first party the sum of one dollar, the receipt whereof is hereby acknowledged in full for this option, and in the event that this agreement becomes absolute by the election and notice above mentioned, then and not otherwise, the said second party, his heirs or assigns agree to pay to first party, his heirs, executors,

administrators or assigns, the further sum of fifty dollars per acre for each acre of merchantable coal in above described tract of land, as the same may be determined by the engineers of the second part, his heirs or assigns."

Now, you will first direct your attention to the question of fact, Did the Cambria Iron Company, or someone acting for Coulter & Huff, give notice within the time prescribed and in the manner prescribed by the option? [They were bound to give a written notice. Agents for the plaintiff in this case, the Cambria Iron Company, in company with one or two others, went to the home of these defendants on or about April 12, 1900, as we recall it, and made a return setting forth that they had served the notice upon these parties on that day by leaving a copy with them, and they refresh their memory at this time by that entry upon the back of the notice. As we recall Mr. Smith's testimony, he said he could not remember the circumstances but that he refreshed his memory from the writing made on the back of the notice and felt that he would not have made that entry unless it was correct. Mr. Russel, as we recall his testimony, when asked about what occurred that day, said that his memory was revived by reason of the return indorsed on the back of the notice. That the notice was served upon Mr. Cover, the old gentleman, there is no dispute. The two young men, however, say that no notice was served upon them. They say that these parties said they were going to take the coal and wanted to give them $2.00 which they refused to take and they say they refused to sign any more papers; they evidently did not want to complicate the title further.

This option says they must be served with written notice. It does not say they must hand to them a copy, but written notice may be served by handing the notice to them and they would be obliged to either say, "We are going to accept the coal and here is your notice," or would be obliged to read the written notice of acceptance. It would seem to us that they could do nothing else than that. Did they do that on this day? There is no dispute here that these people were acting for the holders of the option at that time. In any event, Mr. Russel

represented the holders of the option at that time and if he served the notice of acceptance upon these boys, in compliance with the terms of the option, that made the option binding; if the parties did not serve such a notice in compliance with the agreement, then you would find for the defendants.] [3] If you find, from the weight of the evidence, that they did serve the notice in compliance with the terms of the agreement, then go one step further and see whether or not, under the circumstances, from the weight of the evidence in the case, the Cambria Iron Company intended to follow up its rights, gained by the acceptance of this option, and procure this land, or whether it did not. We believe there is evidence to go to this jury upon the question of abandonment. [This assimilates itself to an equitable ejectment, and the rule of equity that, "He who seeks equity must do equity," is applicable in this case.] [1] [So, while under the state of the record here, if it be proven that the plaintiffs in this case gave the notice required under this option and complied with the terms of the option to the extent that they would have a right to acquire the legal title, if there were nothing else in the case to bar it, yet, under the decisions of the courts in equity, and under the rules of equity there may be an abandonment even of a legal title on record before the running of the statute] [2] namely, before the expiration of twenty-one years. In this option there is a provision that the holders of the option will ascertain the number of acres of merchantable coal in the property by its own engineers and, before the consideration under the terms of that option could be correctly stated in the deed to be demanded, it would be necessary to have a survey by the engineers of the party of the second part, who are the plaintiffs in this case. That could have been overcome by a request on part of the Leidy heirs, that a survey be made and, upon refusal to make a survey, by a tender of the deed, which act would have fully released them. They did not do that, nor did the Cambria Iron Company have the property surveyed, nor was the money tendered. Nevertheless, when the Leidy heirs did not move within twenty days the Cambria Iron Company could have moved by demanding that they

execute a deed, or have presented one for execution, or by tendering the purchase money in accordance with the acreage ascertained from the survey. While these acts, under the law, would have relieved the Leidy heirs, nevertheless, under the law, the Cambria Iron Company had its remedy [and for that reason we submit to you, nothing having been done for a number of years,—under the testimony seven years,—"whether or not it was the intention of the Cambria Iron Company to so pursue the right gained by the acceptance of the option, if you so find that it did accept it, as to compel a conveyance of the land, or whether it did not intend to compel a conveyance of the land. If you find that there was an acceptance of the option, then you proceed a step further and discover whether or not, from the weight of the evidence in this case, it was the intention of the Cambria Iron Company to compel a transfer of the title to the coal, or whether it rested there, holding this shadow over the title, so no one else could get it; if so, even if it accepted the option the defendants are entitled to a verdict.] [5]

Verdict and judgment for defendants. Plaintiffs appealed.

*Errors assigned* among others were (1–5), above instructions, quoting them.

*J. C. Davies*, with him *H. S. Endsley*, for appellants.—The learned court clearly erred in applying the equitable maxim that "he who seeks equity must do equity" in his charge to the jury. The intent of the act of June 10, 1893, was to provide an additional remedy for the quieting of title without the burdens incident to an equitable action: Ullom v. Hughes, 204 Pa. 305; Gans v. Drum, 24 Pa. C. C. Rep. 481.

The right to receive written notice of the acceptance of the option may be waived by parole, and a waiver may be evidenced by expressed agreement or by declarations and conduct from which a fair implication of it arises: Groves v. Donaldson, 15 Pa. 128; Smith v. Snyder, 168 Pa. 541; Jones v. Sowers, 204 Pa. 329.

Having a vested equitable title therein the same could not

ordinarily be lost in a less time than that fixed by the statute of limitation, unless there was satisfactory proof of an intention to abandon: Venture Oil Company v. Fretts, 152 Pa. 451; Calhoon v. Neely, 201 Pa. 97.

Abandonment is a question of fact to be determined by the acts and intentions of the parties: Aye v. Phila. Co., 193 Pa. 456; Penna. Mining Co. v. Martin, 210 Pa. 53; Penna. Mining Co. v. Smith, 210 Pa. 49.

*S. L. Reed,* for appellees.—The first matter of fact in dispute as to whether notice was given as provided by the terms of the option was a question upon which the jury should pass, and it having been decided in favor of the defendants the verdict should stand.

Whether the lessee or his assignees intended to abandon the lease of their right to take the coal was a matter of intention, which was a fact to be found from all the facts and circumstances surrounding the case: Emery v. Regester, 17 Pa. Superior Ct. 482; Aye v. Phila. Co., 193 Pa. 456; Swank v. Fretts, 209 Pa. 625; Gans v. Drum, 24 Pa. C. C. Rep. 481; Groves v. Donaldson, 15 Pa. 128.

OPINION BY MR. JUSTICE MESTREZAT, January 3, 1910:

The learned judge of the court below should have permitted the defendants to pursue the remedy suggested in their petition, and ought not to have compelled them to proceed under another act of assembly. The defendants presented their petition to the court averring that they were in possession of and had title to a certain tract of land in East Taylor township, Cambria county; that the plaintiffs claimed an interest in and title to the coal in and under the premises; and prayed for a rule upon the plaintiffs to bring an action of ejectment for said coal within six months from the service of the rule or show cause why the same could not be brought, as provided in the act approved May 25, 1893, P. L. 131. That act and the Act of April 16, 1903, P. L. 212, 2 Purd. (13th ed.) 1304, permit the party in possession claiming title to the premises to obtain a rule on any adverse claimant to bring an action of eject-

ment within six months as prayed for in the petition presented to the court below. This legislation provides a speedy and complete remedy for one in possession of land claiming title thereto to obtain a final judgment as to the validity of his title against an adverse claimant. It was therefore an appropriate and adequate remedy to determine the rights of the parties to this proceeding to the premises in dispute, and the rule should have been awarded as prayed for. We cannot see any occasion for the court declining the prayer of the petition, and of its own motion awarding an issue under the Act of June 10, 1893, P. L. 415, 1 Purd. (13th ed.) 817. The plaintiffs' claim title to the coal underlying the premises by virtue of an optional agreement which they allege had been accepted and vested the title in them. The defendants were in possession, claiming title, and the plaintiffs had "an apparent interest in or title to the real estate," and therefore the defendants had a right under the act of April 16, 1903, to have a rule upon the plaintiffs to bring an action of ejectment to determine the title to the coal.

There was no objection by either party to the action of the court in substituting a proceeding under the act of June 10, 1893, for proceeding under the act of April 16, 1903, and in awarding an issue "to settle and determine their respective rights and title in and to said lands." The issues awarded by the court and to be determined by the jury were: First, did the plaintiffs avail themselves of their option to purchase the lands described in the petition and give notice of their acceptance of the terms of their optional agreement to defendants in the manner and within the time prescribed in the option? Second, if that fact be found in favor of the plaintiffs, did they afterwards abandon the right to a conveyance of the coal in question? The jury found both issues in favor of the defendants and the court entered judgment upon the verdict as required by the act of assembly.

Both of these issues were for the jury under the evidence submitted. It is unnecessary to discuss the numerous assignments of error filed in the case. It was not pretended that a written notice accepting the option was served on

Howard Leidy, one of the defendants, as required by the optional agreement. The other two defendants deny positively that a written notice accepting the option was served upon them by the plaintiffs. There was no waiver by either of the defendants of the stipulation in the contract requiring service of written notice of the acceptance of the option upon him. That question is not in the case. The jury were justified under the evidence in finding that the plaintiffs had not caused a written notice to be served upon the defendants of the acceptance of the optional agreement.

The question of abandonment was likewise one for the jury under all the evidence, and the learned judge submitted it in a fair and impartial charge. For nearly seven years the plaintiffs took no action towards completing their title and obtaining possession of the coal in dispute. During all those years the defendants retained possession, and necessarily paid the taxes, and claimed title. So far as the evidence discloses, the plaintiffs made no effort to assert their ownership. They made no demand on the defendants for the deed, nor, so far as the evidence shows, did they have their engineers determine the quantity of the acreage as required by the agreement so that the deed could be made. The optional agreement was executed January 31, 1900, under which the plaintiffs were to give notice of their acceptance in writing on or before April 15, 1900. Subsequent to the latter date the plaintiffs took no action whatever in regard to the alleged purchase until they were brought into court in August, 1906, by the rule obtained by the defendants to bring their action of ejectment. In the meantime defendants had given an option on the coal to another party. We think the evidence was sufficient to go to the jury on the question of abandonment.

The assignments of error are overruled and the judgment is affirmed.