### Swentzel v. Kline et al.

*Ejectment—Rule to bring ejectment—Petition for rule—Question of title not to be tried on the rule—Title to be tried in the ejectment—Act of March 8, 1889, P. L. 10, as amended by Act of April 16, 1903.*

1. On a petition under the Act of April 16, 1903, P. L. 212, for rule to show cause why ejectment should not be brought, the question of title cannot be determined on the petition, answer and argument for the rule; such question is to be determined on the ejectment.

2. Where the petition sets forth the proper jurisdictional facts, as that the petitioner is in possession, that the respondents are not in possession, and that respondents claim or have an apparent interest or title in the real estate, the respondents cannot set up as a ground for the court's refusing the rule that relator was a tenant of their father, who was their predecessor in title.

Petition for rule to show cause why ejectment should not be brought. C. P. Columbia Co., Feb. T., 1923, No. 116.

H. R. *Stees* and E. J. *Mullen*, for petitioners.

H. *Mont. Smith*, for respondents.

EVANS, P. J., May 3, 1926.—This matter comes before the court on petition, answer and testimony taken by both sides.

This petition is presented to the court under the provisions of the Act of March 8, 1889, P. L. 10, as amended by the Act of April 16, 1903, P. L. 212. Section 1 of the amended act provides as follows: "Whenever any person not

being in possession thereof shall claim or have an apparent interest in or title to real estate, it shall be lawful for any person in possession thereof, claiming title to the same, to make application to the Court of Common Pleas of the proper county, whereupon a rule shall be granted upon said person not in possession to bring his or her action of ejectment within six months from service of such rule upon him or her, or show cause why the same cannot be so brought; which rule may be made returnable to any term or return-day of such court, and be served and returned as writs of summons are by law served and returned."

Section 2 provides as follows: "Whenever a person claiming an interest in, or title to, such real estate shall have been served and shall fail to appear and show cause why such action cannot be brought within six months after such service, it shall be the duty of the court to enter judgment against the person served, and make the rule absolute, which judgment shall be final and conclusive between the parties, their heirs and assigns; and thereafter no action of ejectment for the recovery thereof shall be brought by such person claiming an interest in, or title to, such real estate, or by any person claiming by, from or under such person."

June 5, 1921, Harry H. Kline, the decedent above named, and the petitioner, Susannah K. Swentzel, entered into a written agreement, a copy of said agreement being as follows:

"*Articles of Agreement,* made and concluded this 20th day of June, 1921, by and between Susannah K. Swentzell, widow of William Swentzell, of the Town of Bloomsburg, County of Columbia and State of Pennsylvania, party of the first part, and Harry H. Kline, of the Township of Benton, County of Columbia and State of Pennsylvania, party of the second part.

"*Whereas,* Susannah K. Swentzell, party of the first part, has this day made, executed and delivered to Harry H. Kline, party of the second part, a deed for all that certain messuage, piece, parcel or lot of ground, situate . . . .

"*And whereas,* the consideration in said deed being certain good and valuable considerations and agreements hereunto specially moving the party of the first part, together with the sum of Five dollars; and

"*Whereas,* the said certain good and valuable consideration and agreements mentioned, as part of the consideration of said deed are contained and embodied in this agreement;

"*Therefore,* this agreement witnesseth, that the parties of the second part, for and in consideration of the premises and the deeding of said messuage, piece, parcel or lot of ground to him by the party of the first part, hereby agrees to repaint the house roof; install electricity for lighting the house; install the necessary light fixtures in said house; install water in said house; and make the necessary connection to kitchen sink and to the bath-room fixtures; and to install a kitchen sink and bath tub, wash stand and hopper; connect said sink and bath room fixtures to the Town sewer; to place the house and out-buildings erected upon said premises in ordinarily good repair; to pay all taxes on said premises; to keep the buildings on said premises insured in some good reliable incorporated stock insurance company or companies to the amount of at least one thousand dollars on the house and three hundred dollars on the barn, and in case of loss by fire the money received from said insurance is to be used to rebuild or restore the building destroyed or damaged to the condition equally as good or better than it was prior to said destruction or damaging; and in case said insurance money is not sufficient to rebuild or restore any of said buildings, as aforesaid, then the said Harry

H. Kline, party of the second part, is to furnish such additional monies as may be necessary to rebuild or restore the building or buildings as aforesaid; in case of the damaging or destruction of any of said buildings by fire the said party of the second part is to rebuild or restore said building or buildings, as aforesaid, within a reasonable length of time; that said party of the second part is to keep the buildings erected on said premises in good ordinary repair.

"*And, further,* the said party of the second part agrees that the party of the first part is to have the free and uninterrupted use, rents, issues and profits of the said messuage, piece, parcel or lot of ground, and the buildings erected thereon, for and during the term of her natural life.

"And the said party of the first part, for and in consideration of the premises, hereby agrees to make, execute and deliver a deed, to the said party of the second part, for the said messuage, piece, parcel or lot of ground hereinabove mentioned.

"This agreement is executed in duplicate, each of the parties to hold a copy, and to be binding as well upon the heirs, executors, administrators and assigns of each of the parties as upon the parties themselves.

"*In witness whereof,* the said parties have hereunto set their hands and seals this day and year first above written."

The same day, June 21, 1921, the petitioner, in accordance with the terms of said agreement and contemporaneously therewith, made, executed and delivered to Harry H. Kline, the decedent, a deed for the premises described in the agreement.

The consideration, as expressed in the deed, is "for and in consideration of certain good and valuable considerations and agreements hereunto specially moving the party of the first part, together with the sum of five dollars."

Harry H. Kline, the party of the second part of the agreement, died intestate on April —, 1922. His widow and children and heirs-at-law are the respondents named in this proceeding.

It is averred in the 4th paragraph of the petition that Susannah K. Swentzell, the petitioner, is now, and has been, in the actual possession of the premises in dispute since 1897, and claims title to the same under deed dated April 8, 1897.

And it is further averred in the 9th paragraph of the same that Dora Kline, Robert E. Kline, Helen S. Hartman and Harry Lee Kline, the respondents named in the petition, not being in possession of said messuage, piece, parcel or lot of ground in said agreement and said deed mentioned and described, claim or have an apparent interest or title to said real estate by virtue of the said deed and the laws of the Commonwealth of Pennsylvania relating to intestates.

It is admitted in the answer filed that the petitioner, Susannah K. Swentzell, is now, and has been continuously since 1897, in the actual physical possession of the premises in dispute.

The answer further discloses that the respondents, not being in possession of the land in dispute, claim or have an apparent interest in or title to the land, the real estate in dispute.

The theory of the respondents is that, notwithstanding the fact that the petitioner is in the actual physical possession of the premises in dispute, she holds the same as a tenant under Harry H. Kline, their predecessor in title. With this contention we do not agree.

The allegations of the plaintiff's petition clearly bring the case within the provisions of the Act of April 16, 1903, P. L. 212, above quoted. She avers

"that your petitioner is the present owner" of the land in controversy; "that your petitioner is now in actual possession of said messuage, piece, parcel or lot of ground, and claims title to the same;" that Dora Kline, Robert Kline, Helen S. Hartman and Harry Lee Kline, not being in possession of the said messuage, piece, parcel or lot of ground, . . . claim to have an apparent interest in or title to said real estate. And, finally, prays the court to grant a rule upon said Dora Kline, Robert Kline, Helen S. Hartman and Harry Lee Kline, the persons not in possession, to bring their action of ejectment for said real estate within six months or show cause why the same cannot be brought."

In Clark *v.* Clark et al., 255 Pa. 574, at pages 577, 578 and 579, Mr. Justice Moschzisker, in reviewing the authorities at great length, says:

"In reaching the conclusion just stated, the learned court below overlooked the true intent and purpose of the legislation under consideration, as clearly indicated in the title and by the provisions of the statute now before us. To begin with, the act in question is announced as legislation 'to settle title to real estate,' and the language employed therein plainly shows such to be its real purpose: Spangler *v.* Trogler, 228 Pa. 217, 226; Foster's Petition, 243 Pa. 92, 95; Mildren *v.* Nye, 240 Pa. 72, 74; but the provisions of the statute also make it obvious that all issues necessarily involved in the determination of title to the real estate in controversy are to be settled in the eventual eject-ment proceeding contemplated by the act, and not on the rule to show cause why ejectment should not be brought; and so we have recently held in pass-ing upon a like statute: Titus *v.* Bindley, 210 Pa. 121, 124-5. On this pre-liminary rule, the inquiry is not to determine who has title to the land in controversy, but whether there is a dispute as to the title between a petitioner in actual possession and a respondent out of possession, who claims or has 'an apparent interest in or title to the real estate.'

"Counsel for the plaintiff very tersely and correctly sum up the situation at bar thus: 'The appellant presented to the proper court her petition, alleg-ing the jurisdictional facts as required by the Act of April 16, 1903, P. L. 212, and a rule issued. The respondents, appellees, in answer to the rule, did not deny any jurisdictional fact averred.in the petition, but alleged, in substance, that, under the will of her husband and the laws of the Commonwealth of Pennsylvania, the petitioner acquired only a life estate in the land, and that they are the owners thereof, subject to her life estate, and, because of her life estate, they cannot bring an action of ejectment, as they are not entitled to possession.'

"While, if it were not for the legislation in question and our decisions thereunder, the record facts now before us might well be held to present a situation which would not justify an ordinary action in ejectment, yet the question remains, are the conditions presented in this case within the curative purpose and effect of the statute? If they are, notwithstanding prior theories and established practice, it follows that the contemplated ejectment may be ordered and proceeded with to judgment.

"Let us see what has already been said by this court upon the general sub-ject in hand, which sheds light on our present inquiry. In Mildren *v.* Nye, *supra*, Mr. Justice Brown, now Chief Justice, said at page 74 of his opinion, that the Act of 1903, *supra*, and the Act of June 10, 1893, P. L. 415, respec-tively provide for 'the settling of titles to real estate' and 'for the quieting of titles to land,' and added: 'Each act is for the same purpose, though the methods of procedure under the one differ from those under the other.' In Fearl *v.* Johnstown, 216 Pa. 205, 207, 208, Mr. Chief Justice Mitchell said of

Swentzel v. Kline et al.

these statutes: 'The purpose of both acts is the same, but the methods of procedure are different.' He further said that where there was a substantial contest as to the fact of present possession, the former act suggested the more appropriate procedure, but that where there was no such controversy, the Act of 1903 provided the more appropriate remedy, and added that, 'on the appearance of these two facts, the possession by plaintiff and the claim of title by the other party, without more, the rule is to be granted to bring ejectment or show cause why it should not be done.' In Cambria Iron Co. v. Leidy, 226 Pa. 122, 129, Mr. Justice Mestrezat said, speaking of the Act of 1903: 'This legislation provides a speedy and complete remedy for one in possession of land, claiming title thereto, to obtain a final judgment as to the validity of his title against an adverse claimant.' Again, in Kimmel v. Shaffer, 219 Pa. 375, 378, Mr. Justice Mitchell, speaking of the Act of 1893, said: 'The agreement of appellant is that the plaintiff's present right of possession and her possession in fact are not disputed, the appellant's claim being only a contingent right upon the death of Keefer, whom she avers to be the life-tenant; but this, though it refers to the future, is still a present dispute of title by which the plaintiff holds possession, and is, therefore, within the act. What a party in possession needs, and what the act gives him, is the right to a present adjudication of his title: Delaware & Hudson Coal Co. v. Genet, 169 Pa. 343.' In Smith v. Hibbs, 213 Pa. 202, 204, Mr. Justice Stewart has this to say of the Act of 1893: 'The suggestion is made that, inasmuch as the other parties defendant . . . were remaindermen, and not in position to assert their title as against the party in possession, the case might be different as to them. This suggestion springs from the supposed analogy between the proceedings contemplated by the act . . . and an equitable eject-ment action. True, in Ullom v. Hughes, 204 Pa. 305, 310, it is said . . . that the act expressly assimilates the proceeding to an equitable ejectment; but it does not result from this that the scope and purpose of the act are to be narrowed by the application of the principles and rules which govern in ejectments.'

"The relevant authorities just reviewed contain the guiding principles that govern this case, and thereunder the learned court below should have directed the defendants to bring their ejectment. When such an action is instituted, the title to the land in controversy can be determined, and, if the verdict favors the defendants, there should be no difficulty in moulding the judgment so as to grant appropriate relief."

We are of the opinion that the case here presented comes clearly within the terms and provisions of the Act of March 8, 1889, P. L. 10, as amended by the Act of April 16, 1903, P. L. 212, and that the rule should be made absolute.

## Decree.

Now, May 3, 1926, the rule heretofore granted upon Dora Kline, Robert Kline, Helen S. Hartman and Harry Lee Kline, widow, children and heirs-at-law of Harry H. Kline, deceased, to bring his, her or their action of ejectment within six months from the date of service of said rule upon him, her or them, or show cause why the same cannot be so brought, is made absolute, and the said respondents are given six months from this date (May 3, 1926) in which to bring said action of ejectment before being subject to the provisions of the Act of March 8, 1889, P. L. 10, as amended by the Act of April 16, 1903, P. L. 212, respecting judgment thereon. All costs of this proceeding on the rule to show cause to be paid by the respondents.

From R. S. Hemingway, Bloomsburg, Pa.